**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| **PENNSYLVANIA HIGHER EDUCATION** | : |
| **ASSISTANCE AGENCY,** | :   CIVIL ACTION |
| **1200 North 7th Street, Harrisburg,** | : |
| **Pennsylvania 17102,** | :   NO. |
| **Plaintiff,** | : |
| | : |
| | : |
| **v.** | : |
| | : |
| **JORGE L. PEREZ, in his official capacity as** | : |
| **Commissioner of the Connecticut Department of** | : |
| **Banking,** | : |
| **260 Constitution Plaza, Hartford,** | : |
| **Connecticut 06103,** | : |
| | : |
| **the CONNECTICUT DEPARTMENT OF** | : |
| **BANKING,** | : |
| **260 Constitution Plaza, Hartford,** | : |
| **Connecticut 06103, and** | : |
| | : |
| **the UNITED STATES DEPARTMENT OF** | : |
| **EDUCATION,** | : |
| **400 Maryland Avenue, SW,** | : |
| **Washington, D.C. 20202,** | : |
| **Defendants.** | : |

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

In this matter, Plaintiff Pennsylvania Higher Education Assistance Agency ("PHEAA"),

which services student loans owned, regulated, and in all ways controlled by the United States

Department of Education (herein, "ED"), faces imminent and irreparable harm as a result of a

dispute between the Connecticut Department of Banking and ED.  Simply stated, the

Connecticut Department of Banking seeks to compel PHEAA to produce confidential federal

student loan borrowers' documents that ED expressly prohibits PHEAA from producing.  The

Connecticut Department of Banking threatens to revoke PHEAA's license to service student

loans in Connecticut if PHEAA does not accede to its demands.  However, if PHEAA produces

the documents, it will be in violation of federal law and thus risk sanctions by ED.  To avoid the irreparable harm that would be caused by Connecticut's revocation of PHEAA's license, and for a declaration that federal law preempts Connecticut's attempt to regulate student loans owned, regulated, and controlled by ED, PHEAA brings this action against (1) Defendants Jorge L. Perez, Commissioner, Connecticut Department of Banking, and the Connecticut Department of Banking (collectively, the "Connecticut Defendants"), and (2) ED.  In support thereof, PHEAA states as follows:

## NATURE OF ACTION

1.      This action for a declaratory judgment and preliminary and permanent injunctive relief is intended to preserve and secure PHEAA's ability to service student loans in the State of Connecticut pursuant to applicable law and its contractual obligations to ED.

2.      PHEAA, as a student loan servicer that contracts with ED to service federal student loans under the Direct Loan Program, 20 U.S.C. § 1087a *et seq.*, is in possession of—but does not own or control—voluminous records containing personal identifying information of individual federal student loan borrowers.  These records belong to ED, which has expressly prohibited PHEAA from disclosing such records to the Connecticut Department of Banking.  ED has further directed that any requests for such records must be addressed to ED itself.

3.      The Connecticut Defendants, citing provisions of Connecticut law purportedly requiring production of books and records by holders of licenses to service student loans upon request, have demanded that PHEAA, as a licensee, produce records containing the personal identifying information of federal student loan borrowers.  However, at ED's express directive, PHEAA has not acceded to that demand, and ED has refused to produce the documents to the Connecticut Defendants directly.  The Connecticut Defendants now threaten to revoke PHEAA's

license to service student loans as soon as April 4, 2018 for failure to produce the requested records.

4.      The live controversy presented by this dispute is whether PHEAA must comply with an existing demand from the Connecticut Defendants to disclose the federal student loan borrower documents at issue, or an existing demand from ED prohibiting the disclosure of those documents.  The true parties in interest are the Connecticut Defendants and ED, whose contrary interpretations of applicable law have left PHEAA caught "between the Scylla of intentionally flouting state law and the Charybdis" of disregarding an express directive by ED.  *Steffel v. Thompson*, 415 U.S. 452, 462 (1974).  PHEAA therefore requests that this Court declare whether the relevant Connecticut statutes are preempted by federal law.

5.      Further, PHEAA asks that the Court grant injunctive relief to prevent the Connecticut Defendants from enforcing state law that, on the merits, is preempted by federal law.  PHEAA will be irreparably harmed in the event that the Connecticut Defendants revoke PHEAA's state license to service student loans in Connecticut on April 4, 2018, as Connecticut has threatened to do.  Without the ability to service student loans—both federal and those issued by private loan holders—to Connecticut borrowers, PHEAA will be unable to comply with its contractual obligations to the federal government, which may result in the termination of PHEAA's federal loan servicing contract.  Revocation may also impact PHEAA's ability to fulfill its contractual obligations to the private entities whose loans PHEAA also services in connection with Connecticut borrowers.

6.      The public interest and balance of the equities, too, greatly favor injunctive relief.  PHEAA services student loans for approximately 100,000 Connecticut student borrowers.  To the extent that revocation of PHEAA's license calls into question its ability to service those loans

student borrowers may experience loan processing delays and other hardships.  The Connecticut

Defendants, by contrast, will not be prejudiced by an injunction to preserve the status quo until

such time as this Court can address the important preemption issues presented herein.

## **PARTIES**

7.      Plaintiff PHEAA is statutorily created instrumentality of the Commonwealth of

Pennsylvania with headquarters located at 1200 North 7th Street, Harrisburg, Pennsylvania

17102.  PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body

corporate and politic constituting a public corporation and government instrumentality."  24 Pa.

Stat. § 5101.  PHEAA conducts a variety of operations in the student loan industry, including,

but not limited to, acting as:  (1) a servicer of private student loans; (2) a servicer and/or

guarantor of federal student loans issued by private lenders under the Federal Family Education

Loan Program; and (3) a servicer of federal student loans issued by ED under the Federal Direct

Lending Program.

8.      Defendant Jorge L. Perez is the Commissioner of the Connecticut Department of

Banking (the "Commissioner").

9.      Defendant the Connecticut Department of Banking is an agency of the State of

Connecticut with headquarters located at 260 Constitution Plaza, Hartford, Connecticut 06103.

10.     Defendant the United States Department of Education is an agency of the United

States government with headquarters located at 400 Maryland Avenue, SW, Washington, D.C.

20202.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

12.     This Court has personal jurisdiction over the Connecticut Defendants because they demand production of documents owned and controlled by ED and concerning federal loans issued by ED, which resides in this judicial district.

13.     Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because ED resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTS

*ED's Administration of Federal Student Loans*

14.     Under the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965), and related statutes and regulations, ED has the authority to issue a variety of federal loans and grants to student borrowers.  Specifically relevant here are the loans issued by ED under the Direct Loan Program, 20 U.S.C. § 1087a *et seq.*, through which the federal government provides loans directly to eligible student borrowers, and benefits awarded to Direct Loan borrowers under the Public Service Loan Forgiveness ("PSLF") Program, *id.* § 1070 *et seq.*

15.     ED, rather than self-service the Direct Loans it issues, contracts with third-party servicers such as PHEAA to perform that function.  20 U.S.C. § 1087f(a).

16.     Every aspect of the servicing of such loans is highly regulated by ED, including administration of loan repayment generally (34 C.F.R. §§ 682.209, 685.208), income-based or income-contingent repayment plans (*id.* §§ 682.215, 685.209), deferments and forbearances (*id.* §§ 682.210–211, 685.204–205), and borrower benefits such as the PSLF Program (*id.* § 685.219).

17.     ED has plenary authority to limit, suspend, or terminate the activities of a federal student loan servicer that violates its legal obligations or its contract with ED.  34 C.F.R. § 682.700(a).

18.     In 2009, PHEAA was selected through a competitive process by ED to service federal loans on a national basis.  ED's servicing contract (the "Contract," attached as Exhibit A), which was renewed in 2014, governs PHEAA's servicing of loans owned by ED.

19.     In addition to requiring that PHEAA "meet all statutory and legislative requirements," Ex. A, Att. A-1, at 3, the Contract specifies 124 enumerated obligations for the servicer, many with dozens of sub-requirements, *id.* at 3–18.  ED monitors PHEAA's performance under the Contract through annual audits, program compliance reviews, and quarterly monitoring reviews of PHEAA's loan servicing practices; PHEAA, in turn, is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed."  *Id.* at 7.  PHEAA is not paid for loans "not being serviced in compliance with the Requirements, Policy and Procedures for servicing federally held debt due to the fault of the servicer."  *Id.*, B.13.C.

20.     The Contract also requires PHEAA to comply with strict records management requirements, which require PHEAA to, *inter alia*, "comply with Federal and [ED] records management policies, including those policies associated with the safeguarding of records covered by the Privacy Act of 1974."  *Id.*, at Att. A-2, at 11–12.

21.     Despite these significant contractual responsibilities to ED, PHEAA remains a third-party loan servicer of ED and is not itself a party to the underlying loan contracts between ED and its borrowers.

*The Connecticut Defendants Demand Production of Federal Student Loan Records from PHEAA*

22.     PHEAA currently services federal and private student loans for approximately 100,000 borrowers residing in the State of Connecticut.  Of this total amount, approximately 80,000 borrowers have federal student loans owned by ED.

23.     On May 1, 2017, PHEAA applied for a license from the Connecticut Defendants to act as a student loan servicer in Connecticut, pursuant to Conn. Gen. Stat. § 36a-847(b). PHEAA's application was approved on June 30, 2017.

24.     To maintain its license with Connecticut, PHEAA must "comply with all applicable federal laws and regulations relating to student loan servicing . . . and the regulations promulgated thereunder."  Conn. Gen. Stat. § 36a-853.  A servicer's "violation of any such federal law or regulation shall be deemed a violation of this section and a basis upon which the [C]ommissioner may take enforcement action pursuant to section 36a-852."  *Id.*

25.     On November 3, 2017, PHEAA received, via email, a letter from the Connecticut Defendants informing PHEAA that they proposed to conduct a limited scope examination of PHEAA in order to "review[] all accounts transferred to [PHEAA] for the months of August, September and October, 2017 as a result of the [PSLF] [P]rogram."

26.     The Connecticut Defendants' November 3, 2017 letter included a "Student Loan Servicer Management Questionnaire and Information Request" (the "Request") directed to PHEAA.

27.     The Request sought, *inter alia*, PHEAA's policies and procedures related to administering the PSLF Program, and also borrower-specific information, including certain borrower complaints.

28.     PHEAA responded to the Request, via email, on November 7, 2017, seeking clarification as to the scope of both the proposed examination and the Request.

29.     That same day, by email, the Connecticut Defendants responded to PHEAA by limiting the scope of the Request in several ways—for example, the Connecticut Defendants limited their request for borrower complaints to "a list of CT [complaints] either filed directly with you, through the US Dept of Education, CFPB or any other entity starting 1/1/17 through October 31, 2017 regarding PSLF transfers."

30.     Also on November 7, 2017, PHEAA received via email an express directive from ED's Office of Federal Student Aid ("FSA") advising that PHEAA was prohibited under federal law from releasing any data or documentation related to PSLF to the CT Department of Banking.

31.     On November 9, 2017, PHEAA sought additional clarification from the Connecticut Defendants by email.  PHEAA also requested information from the Connecticut Defendants regarding the logistics of producing the documents and information requested.

32.     Also that same day, PHEAA communicated ED's November 7 position to the Connecticut Defendants, and provided contact information for FSA officials to whom the Connecticut Defendants could direct any further request for production of federal documents.

33.     On January 11, 2018, PHEAA was advised by the Associate Examiner at the CT Department of Banking that a telephone conference between FSA and the Connecticut Defendants occurred that morning, during which the Connecticut Defendants agreed to issue a direct request to FSA for documents and data owned by FSA and encompassed in the Request.

34.     Also on January 11, 2018, the Connecticut Defendants informed PHEAA that they would issue a direct request to FSA for the FSA-owned records that the Connecticut Defendants had previously sought from PHEAA.

35.     In a letter to the Connecticut Defendants that same day, PHEAA memorialized the aforementioned conversation and stated that PHEAA would "not be providing any responsive

documents [or] data that are specific to FSA." Accompanying that letter, PHEAA fully produced to the Connecticut Defendants certain responses to the Request not implicating the federal prohibition on disclosure of ED's documents, along with all non-FSA-owned responsive documents and data.

36.     Upon information and belief, on January 12, 2018, the Connecticut Defendants requested from FSA access to certain records pertaining to federal student loans that PHEAA services for FSA.

37.     PHEAA received no response from the Connecticut Defendants to its January 11, 2018 letter or its accompanying production of information and documents until more than two months later, on March 21, 2018.

38.     On March 21, 2018, PHEAA received a letter from the Connecticut Defendants "formally convey[ing] [their] concerns related to [the proposed] examination of PHEAA and [to] provide PHEAA with an opportunity to show compliance with all lawful requirements for the retention of its license to service student loans in Connecticut pursuant to Section 4-182(c) of the Connecticut General Statutes."

39.     The March 21 letter represented the first time the Connecticut Defendants asserted that PHEAA had failed to produce "numerous" records sought in the Request in violation of several provisions of Connecticut law (collectively, the "Connecticut Disclosure Statutes"), including:

(a)     Conn. Gen. Stat. § 36a-17, which provides, in pertinent part:

(c) For the purpose of any . . . examination . . . under this title the commissioner may . . . require the production of any records which the commissioner deems relevant or material. . . .

(d) Any person who is the subject of any such . . . examination . . . shall make its records available to the commissioner in readable form; provide personnel and equipment necessary, including, but not limited to, assistance in the analysis of

computer-generated records; provide copies or computer printouts of records when so requested; furnish unrestricted access to all areas of its principal place of business or wherever records may be located; and otherwise cooperate with the commissioner.

(b)     Conn. Gen. Stat. § 36a-849, which provides, in pertinent part:

(a) Each student loan servicer licensee shall maintain adequate records of each student education loan transaction for not less than two years following the final payment on such student education loan or the assignment of such student education loan, whichever occurs first, or such longer period as may be required by any other provision of law.

(b) If requested by the commissioner, each student loan servicer licensee shall make such records available or send such records to the commissioner by registered or certified mail, return receipt requested, or by any express delivery carrier that provides a dated delivery receipt, not later than five business days after requested by the commissioner to do so. Upon request, the commissioner may grant a licensee additional time to make such records available or send the records to the commissioner.

(c)     Conn. Gen. Stat. § 36a-851, which provides, in pertinent part:

(a) In addition to any authority provided under this title, the Banking Commissioner shall have the authority to conduct investigations and examinations as follows:

(1) For purposes of ... general or specific inquiry or investigation to determine compliance with sections 36a-846 to 36a-854, inclusive, the commissioner may access, receive and use any books, accounts, records, files, documents, information or evidence including, but not limited to, . . .

(C) any other documents, information or evidence the commissioner deems relevant to the inquiry or investigation regardless of the location, possession, control or custody of such documents, information or evidence.

40.     The March 21 letter stated that PHEAA's failure to produce the requested records

**"constitute[s] grounds to revoke PHEAA's student loan servicer license in Connecticut**

pursuant to Sections 36a-852 and 36a-51 of the Connecticut General Statutes and forms a basis

to take other administrative action as the Commissioner deems appropriate, including, but not

limited to, initiation of proceedings to order PHEAA to cease and desist and impose a civil

penalty on PHEAA of up to $100,000 per violation." (emphasis added).

41.     The letter concluded by stating that "[p]ursuant to Sections 4-182(c) and 36a-52 [of the Connecticut General Statutes], you are being given an opportunity to show compliance with all lawful requirements for the retention of your student loan servicer license.  You must respond . . . in writing no later than April 4, 2018.  If no written response is received by that date or if the [Connecticut Defendants] find any such response to be insufficient, the [Connecticut Defendants] may issue an administrative action against your license."

42.     On March 26, 2018, ED's Office of the General Counsel denied the Connecticut Defendants' January 12, 2018 request for access to certain FSA records pertaining to student loan borrowers serviced by PHEAA.  ED's letter permitted the Connecticut Defendants to submit a new request to FSA if that request specified alternate grounds to justify their request.

43.     Also on March 26, 2018, PHEAA requested an extension of time—from April 4 to April 24, 2018—to respond to the Connecticut Defendants' March 21 letter.  Among other reasons, PHEAA requested the additional time to "discuss and review the matter further with FSA."

44.     That same day, PHEAA received a summary rejection of its request for an extension of time from the Connecticut Defendants.

45.     On April 2, 2018, Linda J. Randby, Esq., PHEAA's Interim Senior Vice President of Legal and Compliance Services, received a letter from FSA.  The Connecticut Defendants were copied on the letter.

46.     The April 2 FSA letter referenced the Connecticut Defendants' March 21 letter to PHEAA requesting records, and stated that the records requested by the Connecticut Defendants **"belong to the federal government and PHEAA is prohibited from releasing them under its contract with [ED]."** (emphasis added).  The April 2 FSA letter concluded by stating that ED

"would be willing to discuss with the [Connecticut Defendants] the requirements of PHEAA's contract, so that the [Connecticut Defendants] may avoid imposing requirements on PHEAA that conflict with federal law."

47.     On April 2, 2018, representatives from PHEAA participated in a telephone conference with representatives from the Connecticut Defendants.  During the call, the Connecticut Defendants informed PHEAA that they would not rescind their demand that PHEAA provide an explanation for its alleged non-compliance by April 4, 2018.

*ED Memorandum on Records and Data*

48.     ED, through Patrick A. Bradfield, the Director of Federal Student Aid Acquisitions, released a public memorandum on December 27, 2017, regarding ownership of and access to ED records and data (the "ED Memorandum").

49.     In the Memorandum, ED explains that FSA "maintains individually identifying information regarding the application for, distribution of, and repayment and collection of federal student loans and grants authorized pursuant to Title IV of [the HEA]."  The ED Memorandum observes that this information is protected by the Privacy Act of 1974 (the "Privacy Act"), 5 U.S.C. § 552a, which provides for criminal and civil penalties for its unlawful release.

50.     The ED Memorandum further states that "[a]ll records maintained in any Department systems of records to which the Department provides its contractors access remain at all times records of the Department, not records of a contractor."  The ED Memorandum also states that "[a]ny request made from any third party for Department records to which a contractor has access must be made directly to the Department, where it will be evaluated for compliance with the requirements of the Privacy Act . . . ."

51.     During the first week of January 2018, PHEAA shared the ED Memorandum with the Connecticut Defendants.

*ED Notice Regarding Federal Preemption and State Regulation of Student Loan Servicers*

52.    ED recently published a notice entitled "Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers" (the "Preemption Notice").  83 Fed. Reg. 10619 (dated Mar. 7, 2018).

53.    In the Preemption Notice, ED explains that certain state requirements on student loan servicers, including state regulations requiring licensure of servicers performing work for ED, conflict with ED's power to select contractors and to determine whether contractors are in compliance with federal law.  *Id.* at 10620 ("A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give 'the State's licensing board a virtual power of review over the federal determination' that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress.") (quoting *Sperry v. Florida*, 373 U.S. 379, 385 (1963) (quoting *Leslie Miller Inc. v. Arkansas*, 352 U.S. 187, 190 (1956))).

54.    ED further explains that such requirements undermine the "clear command for uniformity" in the HEA with respect to the Direct Loan Program, and that where "the Federal interest requires a uniform rule, the entire body of State law applicable to the area conflicts and is replaced by Federal rules."  *Id.* (citing *Boyle v. United Tech. Corp.*, 487 U.S. 500, 508 (1988)).

55.    The Preemption Notice thus concludes that federal law preempts state regulation of loan servicers that conflict with federal statutes, federal regulations, federal contracts, and congressional objectives.  *Id.* at 10621.

### FIRST CLAIM FOR RELIEF

#### (Declaratory Judgment)

56.     Paragraphs 1 through 55 are incorporated by reference as if fully set forth herein.

57.     The Supremacy Clause of the U.S. Constitution states that "the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.  "[S]tate laws can be pre-empted by federal regulations as well as by federal statutes."  *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (citation omitted).  "Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation."  *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986).

58.     "Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose.  In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it."  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (internal quotation marks and citations omitted).  These doctrines are individually known as express preemption, conflict preemption, and field preemption.  All three preemption doctrines apply here.

59.     Field preemption occurs where "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority."  *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 (1991) (internal quotation marks omitted) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

60.     In its Preemption Notice, ED opined that the federal interest in the field of federal student loans issued under the Direct Loan Program is so dominant as to "preclude State regulation, either of borrowers or servicers."  83 Fed. Reg. at 10621.  The federal interest includes Congress' goals of uniformity and ease of administration for the Direct Loan Program, and ED's interest in regulating "liability of contractors performing their obligations under contracts with the Federal government . . . ."  *Id.*

61.     The Connecticut Disclosure Statutes are also preempted under a theory of conflict preemption, which occurs when a state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("'[T]he purpose of Congress is the ultimate touchstone' in every pre-emption case.").  An obstacle occurs when a state law would directly conflict with federal law or would "undermine [its] goals and policies."  *Volt Info. Sciences v. Stanford Univ.*, 489 U.S. 468, 477–78 (1989).

62.     In determining whether a conflict exists, the Court must give weight to an agency's determination of the objectives.  *See Brannan v. United Student Aid Funds, Inc.*, 94 F.3d 1260, 1264 (9th Cir. 1996) ("Because Congress has delegated to the Secretary its authority to implement the provisions of the HEA, the Secretary is uniquely qualified to determine whether a particular form of state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, . . . and therefore, whether it should be preempted.") (alteration in original) (internal quotation marks omitted) (quoting *Medtronic*, 518 U.S. at 496).

63.     In its Preemption Notice, ED provided a non-exhaustive list of examples of state laws and regulations covering the Direct Loan Program that conflict with the HEA.  That list included state laws requiring licensees, among other things, to submit to investigations and audits by state authorities, as well as state laws that undermine Congress's goal of saving taxpayer dollars in administering the Direct Loan Program, such as through disclosure and annual reporting requirements.  83 Fed. Reg. at 10620–21.

64.     Here, the Connecticut Disclosure Statutes purport to require servicers to make records available to the Connecticut Defendants, in some circumstances within five business days after the Commissioner's official request.  Federal law, as explained in the ED Memorandum, prohibits PHEAA from providing student loan records directly to the Connecticut Defendants.  In other words, it is impossible for PHEAA to comply with both federal and state law.  *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995) (explaining that under conflict preemption, "a federal statute implicitly overrides state law . . . when state law is in actual conflict with federal law" when it is "impossible for a private party to comply with both state and federal requirements").

65.     Last, express preemption occurs where Congress indicates its intent to displace state law through express language in a provision.  *Chae v. SLM Corp.*, 593 F.3d 936, 942 (9th Cir. 2010).

66.     The HEA includes an express preemption provision in 20 U.S.C. § 1098g, which states that "[l]oans made, insured, or guaranteed pursuant to a program authorized by [T]itle IV of the Higher Education Act . . . shall not be subject to any disclosure requirements of any State law."

67.     20 U.S.C. § 1083, titled "Student loan information by eligible lenders," and 34 C.F.R. § 682.205, titled "Disclosure requirements for lenders," regulate the specific disclosure obligations pertaining to loans issued under the Federal Family Education Loan ("FFEL") Program.  20 U.S.C. § 1087e provides that Direct Loans are subject to "the same terms, conditions, and benefits" as FFEL loans.

68.     Direct Loans fall within Title IV of the HEA and thus are subject to the express preemption provision in 20 U.S.C. § 1098g.  *See Chae*, 593 F.3d at 942.

69.     The Connecticut Disclosure Statutes purport to require PHEAA to provide disclosures to the Connecticut Defendants in ways that are not mandated under the HEA, including with respect to documents that PHEAA is not obligated to disclose to the Connecticut Defendants under the HEA, and in fact is prohibited from disclosing to the Connecticut Defendants under federal law.

70.     As a result, 20 U.S.C. § 1098g of the HEA expressly preempts the Connecticut Disclosure Statutes.

71.     An actual and justiciable controversy presently exists concerning, among other issues, whether the Connecticut Enforcement Statutes are preempted by federal law.

72.     A declaration as to the legality and enforceability of the Connecticut Disclosure Statutes is needed to eliminate the uncertainty caused by the conflicting state and federal governmental directives giving rise to this proceeding.

73.     Therefore, PHEAA is entitled to a judicial determination pursuant to 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. 57 as to whether federal law preempts the Connecticut Disclosure Statutes, and as to whether the Connecticut Defendants have the power and authority

to enforce the Connecticut Disclosure Statutes and to revoke PHEAA's license to service student loans because of its inability to produce the documents sought by the Connecticut Defendants.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief)

74.     PHEAA incorporates and re-alleges the allegations contained in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     As stated above, a strong likelihood exists that federal law preempts the Connecticut Disclosure Statutes, and that the Connecticut Disclosure Statutes are invalid and unenforceable.

76.     The Connecticut Defendants have threatened to revoke PHEAA's license to service student loans on or about April 4, 2018, as a result of PHEAA's inability under federal law to comply with the Connecticut Disclosure Statutes.

77.     The revocation of PHEAA's license to service student loans would cause irreparable harm to PHEAA by rendering it potentially unable to comply with its contractual obligations to the federal government, which may result in termination of PHEAA's federal loan servicing contract, and may also impact the loan servicing agreements PHEAA holds with dozens of private lenders doing business in Connecticut.  PHEAA will also suffer irreparable reputational harm if the Connecticut Defendants revoke its Connecticut license.

78.     The revocation of PHEAA's license to service student loans would be contrary to the public interest because uncertainty over PHEAA's ability to continue servicing student loans in Connecticut has the potential to result in loan servicing delays and other hardships on approximately 100,000 student borrowers across Connecticut.

79.     Therefore, an injunction is necessary to prevent the Connecticut Defendants from enforcing the Connecticut Disclosure Statutes against PHEAA or otherwise revoking PHEAA's license to service student loans on that basis.

## PRAYER FOR RELIEF

WHEREFORE, PHEAA demands:

(a)     A declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that federal law preempts the Connecticut Disclosure Statutes under which the Connecticut Defendants threaten to revoke PHEAA's license to service student loans in Connecticut;

(b)     Preliminary and permanent injunctive relief prohibiting the Connecticut Defendants from revoking PHEAA's license to service student loans due to PHEAA's inability to provide documents owned and regulated by ED; and

(c)     Such other relief as the Court deems just and proper.

Dated:  April 4, 2018                   By:     /s/ William A. McDaniel, Jr.
                                                William A. McDaniel, Jr.
                                                 Bar. No. 293746
                                                 mcdanielw@ballardpshar.com

                                                **BALLARD SPAHR LLP**
                                                1909 K Street, NW, 12th Floor
                                                Washington, DC 20006
                                                Telephone: (202) 661-2200
                                                Facsimile: (202) 661-2299

                                                John C. Grugan
                                                  (*pro hac vice* pending)
                                                  gruganj@ballardspahr.com
                                                Thomas F. Burke
                                                  (*pro hac vice* pending)
                                                  burket@ballardspahr.com
                                                Eleanor Bradley Huyett
                                                  (*pro hac vice* pending)
                                                  bradleyem@ballardspahr.com

                                                **BALLARD SPAHR LLP**
                                                1735 Market Street, 51st Floor
                                                Philadelphia, PA 19103
                                                Telephone: (215) 665-8500
                                                Facsimile: (215) 864-8999

                                                *Attorneys for Plaintiff Pennsylvania Higher
                                                Education Assistance Agency*